UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JENNIFER ENGELSEN,

    *Plaintiff*,

    v.

NETCREDIT LOAN SERVICES, LLC,
REPUBLIC BANK & TRUST COMPANY,
*and*
TRANS UNION, LLC,

    *Defendants*.

Case No: 6:25-cv-1207

## COMPLAINT

**COMES NOW** the Plaintiff, JENNIFER ENGELSEN ("Ms. Engelsen"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, NETCREDIT LOAN SERVICES, LLC ("NetCredit"), REPUBLIC BANK & TRUST COMPANY ("Republic Bank"), and TRANS UNION, LLC ("Trans Union"), (collectively, "Defendants") stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Ms. Engelsen against NetCredit only for violations of the Florida Consumer Collection Practices Act, § 559.55, Fla. Stat., *et seq.* ("FCCPA") and against all Defendants for violations of the Florida Civil Remedies

for Criminal Practices Act, § 772.101, Fla. Stat., *et seq.* ("CRCPA") and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction for Plaintiff's RICO claims arises under 18 U.S.C. § 1965 and 28 U.S.C. § 1367.

3.      This Court has supplemental jurisdiction for Ms. Engelsen's state law claims pursuant to 28 U.S.C. § 1367.

4.      The Defendants are subject to the provisions of the CRCPA and RICO, and NetCredit is subject to the provisions of the FCCPA, and are subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k) and § 48.193, Fla. Stat.

5.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because the acts complained of were committed and/or caused by the Defendants therein.

## PARTIES

### Ms. Engelsen

6.      Ms. Engelsen is a natural person who at all times relevant has resided in the City of Sanford, Seminole County, Florida.

7.      Ms. Engelsen is a *Consumer* as defined by the FCCPA, § 559.55(8), Fla. Stat.

### NetCredit

8. NetCredit is a Delaware limited liability company with a principal business address of 175 W Jackson Blvd., Suite 600, Chicago, IL 60604.

9. Enova International, Inc. ("Enova") is the parent company of NetCredit.

10. NetCredit is registered to conduct business in the State of Florida as a limited liability company and its Florida Registered Agent is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

### Republic Bank

11. Republic Bank is a Kentucky profit corporation whose principal business address is 601 West Market Street, Louisville, KY 40202.

12. Republic Bank's Florida Registered Agent is Wendy Penley, 10577 State Road 54, New Port Richey, FL 34655.

### NetCredit & Republic Bank Claim Control of NetCredit

13. NetCredit and Republic Bank purport to control NetCredit, an online lending platform which operates from www.NetCredit.com.

### Trans Union

14. Trans Union is a Delaware limited liability company with a principal business address of 555 West Adams Street, Chicago, IL 60661.

15. Trans Union's Delaware registered agent is The Prentice-Hall Corporation System, Inc., 251 Little Falls Drive, Wilmington, DE 19808.

### FACTUAL ALLEGATIONS

### NetCredit Makes Illegal Line of Credit to Ms. Engelsen

16.     On or around March 26, 2025, NetCredit issued an open-ended line of credit to Ms. Engelsen with a credit limit of $2,250 (the "NetCredit Account".) **SEE PLAINTIFF'S EXHIBIT A.**

17.     The NetCredit Account allowed Ms. Engelsen to take out cash advances up to a total credit limit.

18.     Ms. Engelsen's NetCredit Account charged a "cash advance" fee of 10% of the cash advance amount.

19.     The NetCredit Account also charged a "statement balance" fee anywhere between $10 and $700, based on the total of the carried balance for each statement.

20.     Shortly after Ms. Engelsen opened the NetCredit Account, she borrowed $2,250 on the NetCredit Account.

21.     Ms. Engelsen only received a total of $2,025, as she was immediately charged a fee for the cash advance which was $225.

22.     Ms. Engelsen was also charged a "statement balance" fee of $115.

23.     Per § 687.03, Fla. Stat., interest is computed including fees for "any contract, contrivance, or device whatever whereby the debtor is required or obligated to pay a sum of money greater than the actual principal received."

24.     The NetCredit Account thus had an effective *annual percentage rate* ("APR") of at least 436.54%.



25. The NetCredit Account was used primarily for family, personal, or household purposes, specifically purchases for consumer goods and services, and therefore meets the definition of Debt under the FCCPA, § 559.55(6), Fla. Stat.

26. § 687.071(1), Fla. Stat., renders loans made with annual interest rates greater than 18% as usurious.

27. § 687.071(2), Fla. Stat., renders loans made with annual interest rates greater than 25%, as criminally usurious.

28. § 687.071(7), Fla. Stat. renders any criminally usurious loan void and unenforceable.

29. Long-standing public policy in Florida confirms the impossibility of the alleged debt. *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious loans are "void as against the public policy of the state as established by its Legislature.")

30. Any person who willfully makes a criminally usurious loan, in addition to subjecting themselves to criminal sanctions, forfeits the right to collect payment for the loan. *Id.*

31. Indeed, even the recovery of the principal balance made at usurious rates is impermissible under Florida law. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

32. The usury statutes aim to protect the needy borrower by penalizing the unconscionable money lender. *Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *see also Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966).

33. Florida has taken usury one step further in the consumer loan context through the passing of the Consumer Finance Act, § 516, Fla. Stat. (the "Act").

34. The Act requires licensure and state oversight for lenders issuing loans to Florida consumers in the amount of $25,000 or less. § 516.02(1), Fla. Stat.

35. The Act further restricts the interest and fees which may be charged by a licensed consumer finance company.

36. § 516.02(c), Fla. Stat., indicates that any loan which fails to comply with the Act is unenforceable in Florida *even if valid wherever made.*

37. Thus, Florida has made clear that in order to enforce a consumer loan against a Florida resident, a lender must be licensed in Florida and comply with the Consumer Finance Act.

38.     Ms. Engelsen's NetCredit Account charged an annual interest rate exceeding 25%, more than the rate permitted by the Act.

39.     None of the Defendants are licensed as a Consumer Finance Company in Florida.

40.     The NetCredit Account is thus unenforceable against Ms. Engelsen, regardless of whether it was valid under Kentucky law or wherever else it may have been made.

41.     The NetCredit Account made to Ms. Engelsen by NetCredit included an annual percentage rate that vastly exceeded the maximum lawful interest rate in Florida.

42.     Because the NetCredit Account was subject to an annual interest rate which vastly exceeded the 25% limit as proscribed in § 687.071(2), Fla. Stat., the NetCredit Account was void *ab initio* and unenforceable in Florida, pursuant to § 687.071(7), Fla. Stat.

43.     <u>Any</u> amount repaid on an illegal, usurious debt deemed *void ab initio* by state law constitutes unjust enrichment, even if less than the original amount of the loan. *See, e.g., Williams et al. vs. Big Picture Loans, LLC*, case 3:17-cv-461, E.D. Virginia, July 20, 2021.

44.     Further, the NetCredit Account was a *unlawful debt* pursuant to § 772.102(2)(a)(3), Fla. Stat., and 18 U.S.C. § 1961(6).

45.     NetCredit made multiple collection communications to Ms. Engelsen, via e-mail, and text message.

46.     Ms. Engelsen has made a total of at least $1,696 in payments towards the NetCredit Account.

## NetCredit Engages in Rent-a-Bank Scheme with Republic Bank

47.     NetCredit is one of several online lenders ultimately owned by Enova.

48.     All of Enova's online lending platforms lend to consumers at interest rates deemed illegal in most states.

49.     Because almost every state, including Florida, renders NetCredit's interest rates criminally usurious, Enova claims to partner with Republic Bank, a bank with its primary offices in Louisville, Kentucky.

50.     Purportedly, Republic Bank originates the lines of credit and then assigns accounts to a subsidiary of Enova, which "services" the loan.

51.     On information and belief, Enova has registered a separate limited liability company to act as the servicer of its NetCredit accounts in each state, each of which is owned by NC Financial Solutions, LLC, which is a subsidiary of Enova. **SEE PLAINTIFF'S EXHIBIT B.**

52.     Pursuant to this model, no capital belonging to Republic Bank is at risk.

53.     Enova indemnifies Republic Bank against any losses and, in a complex series of transactions utilizing several different companies, money "loaned" by Republic Bank is immediately repaid to it by Enova and other related entities, who then acquire "servicing" rights and become an assignee of the loan.

54. Republic Bank had virtually nothing to do with the marketing, underwriting, servicing, and collection of the NetCredit Account.

55. Indeed, NetCredit's trademark is registered to CNU Holdings – another Enova subsidiary. **SEE PLAINTIFF'S EXHIBIT C.**

56. Enova also disclosed, in its SEC filings, that it spent $523.6 million in marketing across all of its lending brands in 2024, compared to $414.5 million in 2023. *See*

https://www.sec.gov/ix?doc=/Archives/edgar/data/0001529864/00009501702502 2244/enva-20241231.htm

57. Enova, through its subsidiaries, and not Republic Bank, pre-screens and markets NetCredit to consumers through websites, call centers, direct mail, e-mail, and other marketing channels controlled by Enova and its network of subsidiaries.

58. NC Financial FL then acts as the servicer for Florida consumers with NetCredit accounts.

59. NC Financial FL, or another subsidiary of Enova, reconciles the accounts, posts payments and other credits to the accounts, and provides periodic billing statements to consumers.

60. Republic Bank simply receives a guaranteed fee, per loan, for renting its name and status as an FDIC-insured bank to NetCredit.

61. Such "rent-a-bank" schemes allow predatory lenders like NetCredit to make loans to consumers in states which prohibit usury, including Florida, with a modicum of legal cover.

62.    As a state-chartered federally insured bank, Republic Bank can charge the maximum interest rate of its home state of Kentucky, on all cards issued nationwide. See 12 U.S.C. § 1831d(a).

63.    As Republic Bank does not hold the predominant economic interest in NetCredit's extensions of credit, including Ms. Engelsen's NetCredit Account, Republic Bank is not the true lender.

64.    Enova – a publicly-traded company on the New York Stock Exchange with a market capitalization of over $1 billion – claims on its website that *it* has funded over $59+ billion of loans. **SEE PLAINTIFF'S EXHIBIT D.**

65.    Enova's 2024 10-K filing with the Securities and Exchange Commission highlighted that Enova presents to its investors, and potential investors, that Enova *itself* has over $3 million of loan balances receivable at present.

66.    Enova's stock prospectus repeatedly highlights that it considers loan products like NetCredit to be its loans and property.

67.    For example, one-page states "non-prime customers have unexpected expenses and limited savings," noting that "our products meet the needs of underserved populations."

68.    Enova's stock prospectus also explains its own proprietary technology is utilized for loan underwriting, loan processing, collections, fraud detection and new customer acquisition – the entire business of lending money online.

69. Of note, these statements contradict claims made on the NetCredit.com website which claims, in fine print at the bottom, "loans and lines of credit are underwritten by" Republic Bank.

70. Enova also describes customers of NetCredit as having "near-prime" credit scores.

71. In Enova's 2024 10-K, it states in part, "We market our financing products under the names CashNetUsa at www.cashnetusa.com, NetCredit at www.netcredit.com,".

72. Presumably, if Republic Bank were the true lender of NetCredit accounts, the financial condition of Republic Bank would be of interest to investors of Enova.

73. Enova's 2024 10-K filing does, though, explain how it purchases loans made by its "bank partners," stating "certain line of credit accounts are extended by an issuing bank partner and we may purchase extensions under those line of credit accounts."

74. Enova goes on to state in its 10-K disclosure "The issuing bank partner earns origination fees from the customers who borrow from it and retains the interest paid during the period that the issuing bank partner owns the loan," without disclosing that such time period is often a few days, or less.

75. Thus, the "bank partner" pockets the origination fee – typically 5% – while the rest of the revenue, including usurious interest, is retained by Enova and its network of subsidiaries.

76.     Enova's 2024 10-K disclosure specifically references the Second Circuit's decision in *Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015) multiple times, warning investors that its business could be impacted adversely by this decision, stating in part: "In some circumstances, federal preemption and application of an out-of-state choice of law provision will not, or may not, be available for the benefit of certain non-bank purchasers of loans to defend against a state law claim of usury."

77.     The consumer-facing website NetCredit.com also discloses that in some states, such as Delaware, NetCredit accounts are "are offered by a member of the NetCredit family of companies."

78.     Yet in other states, like Florida, the loans are "funded by Capital Community Bank, Republic Bank & Trust Company, or Transportation Alliance Bank, Inc. d/b/a TAB Bank."

79.     Enova's election to "partner" with Republic Bank for loans in states with usury caps demonstrates Enova's knowledge that its loans are illegal in such states.

80.     On information and belief, NetCredit reports its NetCredit accounts to various nationwide CRAs, including Experian Information Solutions, Inc. ("Experian").

81.     The address associated with the NetCredit tradelines in Experian's disclosures is NetCredit's address in Chicago.

82.     NetCredit, being a non-bank assignee of the NetCredit Account, has no legal ability to collect interest exceeding 25% on the NetCredit Account as this rate is criminally usurious in Florida. *See Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d

Cir. 2015) (rejecting "valid-when-made" argument that would have allowed non-bank assignee to collect interest at higher than lawful rates).

83.    Additionally, Florida's "usury statutes show clear legislative intent to prevent accomplishment of a usurious scheme by indirection, and the concealment of the needle of usury in a haystack of subterfuge." *Pinchuck vs. Canzoneri*, 920 So. 2d 713, 715-16, (Fla. 4th DCA, 2006).

84.    The Defendants, through NC Financial Fl or another Enova subsidiary, also attempted collection of the NetCredit Account via ACH withdrawals from Ms. Engelsen's Florida checking account, and via emails to Ms. Engelsen.

### Trans Union Knowingly Facilitates Loansharking

85.    Trans Union is a major CRA which services the needs of online payday lenders like NetCredit; e.g., lenders making short-term, small-dollar loans at triple-digit interest rates.

86.    Trans Union has terabytes of proprietary data concerning consumers' credit history, employment data, past loan experiences, and much more.

87.    Trans Union has extensive policies in place to conduct due diligence on potential new customers, which includes, in most cases, sending an investigator to the primary business office of the lender.

88.    Trans Union also examines the states the lender does business in, and examines the lender's website, including pages which show the interest rates, terms, and fees assessed.

89.    Trans Union has had numerous lawsuits filed against it concerning its provisioning of credit reports to online payday lenders with sham bank affiliations such as NetCredit.

90.    As a result of the extensive litigation, which delved in great detail into "rent-a-bank" schemes and, moreover, repetitively hammered the fact the loans were made at triple-digit interest rates, Trans Union could not plausibly be unaware of the usurious interest rates charged by online lenders, including NetCredit.

91.    Trans Union knew that, when furnishing consumer credit reports to NetCredit the data it was providing was in connection with the making of a loan at a triple-digit interest rate.

92.    While laws restricting the content of credit reports like the Fair Credit Reporting Act ("FCRA") may not strictly require a CRA to investigate the legality of a debt in all instances before incorporating data from an online lender into reports sold, nothing in the FCRA inoculates a CRA from liability under state or federal anti-racketeering laws for furnishing reports for profit to lenders it has reason to know are making unlawful loans.

93.    Indeed, non-natural persons like Trans Union outside of a racketeering enterprise can be civilly liable under federal anti-racketeering laws if they "agreed to facilitate a scheme by providing tools, equipment, cover or space," provided the "facilitation was knowing because the defendant was aware of the broader scheme, even if he was unaware of the particulars." *United States v. Zemlyansky*, 908 F.3d 1 (2d Cir. 2018)

Page **14** of **31**

94.    Trans Union's assistance in the "rent-a-bank" scheme is of critical importance.

95.    Absent the trove of data Trans Union knowingly supplied, no such loans could have been or would have been made to Ms. Engelsen.

96.    Indeed, on or around March 26, 2025, Trans Union sold Ms. Engelsen's consumer report to NetCredit. **SEE PLAINTIFF'S EXHIBIT E.**

97.    Because Trans Union receives tradeline data concerning loans made by NetCredit concerning thousands of consumers, it is well aware of the broader scheme of the other Defendant's conspiracy, since it gets a birds-eye view of the lending racket involving thousands of loans made by NetCredit — every single one of which is made at triple-digit interest rates.

98.    Trans Union also periodically receives disputes from consumers about NetCredit tradeline data, alleging the loans are usurious and unenforceable.

99.    In addition, Trans Union operates as a *de facto* collection agency for NetCredit, since the presence of the NetCredit tradeline on the consumer's credit report acts as both a carrot and a stick: payment of the usurious loan maintains the consumer's credit rating and score, but failure to pay it comes with the caveat that negative data will report, further exacerbating the plight of a consumer already under dire financial circumstances who was forced to turn to an online loan shark to make ends meet.

100.    For years, courts have recognized the power of credit reporting to procure payment. A creditor's "ability to report on the credit habits of its customers is a

powerful tool designed, in part, to wrench compliance with payment terms." *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993).

101.    Trans Union sold a report to NetCredit in connection with Ms. Engelsen's Account.

102.    Plaintiff has been damaged in that she has paid the Defendants for an extension of credit which is void and unenforceable pursuant to Florida law.

103.    Plaintiff has also suffered downstream economic losses since the sky-high interest rates (and fees) paid to Defendants left her with less money available to pay her legitimate creditors, causing her to incur late fees, bank fees, and other costs.

104.    Plaintiff also suffered severe emotional distress both upon learning that she had been the target of the Defendants' usurious and illegal loan and as a result of the Defendants' attempts to collect an unenforceable account.

105.    Plaintiff has suffered a significant impairment to her credit and scores due to the Defendants reporting the Account as a "legally owed" obligation to the CRAs.

106.    Ms. Engelsen has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## NETCREDIT'S VIOLATIONS OF THE FCCPA, § 559.72(9), Fla. Stat.

107.    Ms. Engelsen incorporates Paragraphs 1 – 106 as if fully restated herein.

108.    NetCredit violated § 559.72(9), Fla. Stat., when it attempted to collect – and did collect – on Ms. Engelsen's Account. The Account was illegitimate and unenforceable due to the application of effective interest rates in excess of 25%

annually on the principal amount of the Account, in violation of § 687.071, Fla. Stat., and NetCredit knew that the Account was unenforceable in Florida.

109. NetCredit violated § 559.72(9), Fla. Stat. when it asserted rights which do not exist, specifically, the right to collect on the Account from Ms. Engelsen, when any balance on the Account was not legally owed pursuant to Florida law.

110. NetCredit attempted to enforce the unlawful debt and/or asserted the legal right to enforce the unlawful debt when it:

    a. attempted collection of the Account via emails to Ms. Engelsen;

    b. attempted collection of the Account via calls to Ms. Engelsen; and,

    c. initiated ACH debits from Ms. Engelsen's checking account in an attempt to obtain payment on the Account.

111. NetCredit's actions were willful, intentional, and done for the express purpose of collecting an unenforceable debt from Plaintiff and profiting from such collection.

**WHEREFORE,** Ms. Engelsen respectfully requests this Honorable Court enter judgment against NetCredit for:

    a. Statutory damages of **$1,000.00** pursuant to § 559.77(2), Fla. Stat.;

    b. Actual damages pursuant to § 559.77(2), Fla. Stat.;

    c. Injunctive relief preventing NetCredit from attempting to collect on the Account from Ms. Engelsen pursuant to § 559.77(2), Fla. Stat.;

    d. Reasonable costs and attorney's fees pursuant to § 559.77(2), Fla. Stat.; and,

e.    Such other relief that this Court deems just and proper.

## COUNT II
## DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF THE
## CRCPA, § 772.103(3), FLA. STAT.

112.    Ms. Engelsen incorporates Paragraphs 1 – 106 as if fully restated herein.

113.    The Defendants, through their participation in the NetCredit.com lending platform, constitute an "enterprise" under CRCPA, § 772.102(3), Fla. Stat.

114.    The NetCredit Account charged an effective interest rate far in excess of Florida's maximum permitted rate and, thus, the NetCredit Account constitutes "unlawful debt" pursuant to § 772.102(2), Fla. Stat.

115.    The Defendants each associated with the enterprise and participated in the affairs of the enterprise, directly or indirectly, for the purpose of the collection of unlawful debt.

116.    The Defendants' participation in the enterprise violated § 772.103(3), Fla. Stat., and caused Plaintiff to repay amounts and incur fees as the direct result of Defendants' attempts to collect payment on an unlawful loan.

117.    The Defendants' intent is evident from their business model, where they have created a sham partnership in an attempt to assert exemption from state usury laws.

**WHEREFORE,** Ms. Engelsen respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, for:

a.     Threefold the amount of actual damages, or, in the alternate, the statutory minimum of **$200**, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b.     Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.;

c.     Any other relief this Court deems equitable and proper under the circumstances.

## COUNT III
### DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF THE CRCPA, § 772.103(4), FLA. STAT.

118.   Ms. Engelsen incorporates Paragraphs 1 – 106 as if fully restated herein.

119.   The Defendants, through their participation in the NetCredit.com lending platform, constitute an "enterprise" under CRCPA, § 772.102(3), Fla. Stat.

120.   The NetCredit Account charged an effective interest rate far in excess of Florida's maximum permitted rate and, thus, the NetCredit Account constitutes "unlawful debt" pursuant to § 772.102(2), Fla. Stat.

121.   The Defendants violated § 772.103(4), Fla. Stat., by conspiring with each other, and other entities, and/or endeavoring to issue and collect unlawful debts through the NetCredit.com lending platform.

122.   The Defendants each took actions in furtherance of this conspiracy when they, at various times, did the following:

a.     issued the Account to Ms. Engelsen;

b.     initiated an ACH deposit to Ms. Engelsen's bank account;

c.     made attempts to withdraw money via ACH debit;

d.     attempted collection of the Account through emails to Ms. Engelsen;

e.     attempted collection of the Account through phone calls to Ms. Engelsen;

f.     claimed ownership of NetCredit.com accounts to provide a guise of issuance from a bank; and/or,

g.     provided credit reports regarding Plaintiff, as part of the application process.

123.    The Defendants each agreed to the overall objective of the conspiracy – to issue and collect unlawful loans through NetCredit.com.

**WHEREFORE,** Ms. Engelsen respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, for:

a.     Threefold the amount of actual damages, or, in the alternate, the statutory minimum of **$200**, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b.     Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.;

c.     Any other relief this Court deems equitable and proper under the circumstances.

### COUNT IV
### DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF
### RICO, 18 U.S.C § 1962(a)

124.    Ms. Engelsen incorporates paragraphs 1 – 106 as if fully stated herein.

125.    The Account carried an annual interest over the maximum rate allowed by Florida law.

126. The Account it this an *Unlawful Debt* per 18 U.S.C. § 1961(6).

127. The Defendants each received proceeds, directly or indirectly, from the collection of the Account.

128. The Defendants each used or invested, directly or indirectly, a portion of the income derived from the collection of the Account to acquire or further establish or operate the enterprise.

129. The Defendants criminal intent is evinced by the use of the "rent-a-bank" scheme to avoid state usury laws.

130. Therefore, the Defendants violated 18 U.S.C § 1962(a).

**WHEREFORE,** Ms. Engelsen respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a. Threefold the amount of actual damages;

b. Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964©; and,

c. Any other relief this Court deems equitable and proper under the circumstances.

### COUNT V
### DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF RICO, 18 U.S.C § 1962(b)

131. Ms. Engelsen incorporates paragraphs 1 – 106 as if fully stated herein.

132. The Account carried an annual interest more than the maximum rate allowed by Florida law.

133. The Account is thus an *Unlawful Debt* per 18 U.S.C. § 1961(6)

134.    The Defendants each received proceeds, directly or indirectly, from the collection of the Loans.

135.    The Defendants each utilized a portion of the income derived from the collection of the Loans to acquire or maintain, directly or indirectly, interest or control in an enterprise.

136.    Therefore, the Defendants violated 18 U.S.C § 1962(b).

**WHEREFORE,** Ms. Engelsen respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a.    Threefold the amount of actual damages;

b.    Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c); and,

c.    Any other relief this Court deems equitable and proper under the circumstances

### COUNT VI
### DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF RICO, 18 U.S.C § 1962(c)

137.    Ms. Engelsen incorporates Paragraphs 1 – 106 as if fully restated herein.

138.    The Account carried an annual interest more than the maximum rate allowed by Florida law.

139.    The Account is thus an unlawful debt per 18 U.S.C. § 1961(6).

140.    The Defendants each associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of an unlawful debt.

Page **22** of **31**

141. The Defendants' participation in the enterprise caused Ms. Engelsen to repay amounts on the Account.

142. The Defendants utilized the internet, telephone, and/or mail to reach across state lines in the operation of the netcredit.com platform, through:

    a.  collection correspondence;

    b.  credit reporting;

    c.  electronic mail;

    d.  deposits to Ms. Engelsen's Florida bank account;

    e.  selling credit reports to NetCredit, regarding the Plaintiff; and,

    f.  withdrawals from Ms. Engelsen's Florida bank account.

143. Therefore, the Defendants violated 18 U.S.C § 1962(c).

**WHEREFORE,** Ms. Engelsen respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

a.    Threefold the amount of actual damages;

b.    Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c); and,

c.    Any other relief this Court deems equitable and proper under the circumstances.

### COUNT VII
### DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF RICO, 18 U.S.C § 1962(d)

144. Ms. Engelsen incorporates Paragraphs 1 – 106 as if fully restated herein.

145.    The Defendants violated **18 U.S.C § 1962(d)** by conspiring with each other to issue and collect unlawful debts through the netcredit.com lending platform, including the Account.

146.    The Defendants each took actions in furtherance of this conspiracy when they, at various times, did the following:

      a.  issued the Account to Ms. Engelsen;

      b.  initiated deposits to Ms. Engelsen's bank account;

      c.  initiated withdrawals from Ms. Engelsen's bank account;

      d.  attempted collection of the credit lines through correspondence to Ms. Engelsen;

      e.  sold credit reports in connection with Ms. Engelsen's Account; and/or,

      f.  claimed Republic Bank ownership of the Account to provide a guise of bank issuance.

147.    The Defendants also each agreed to the overall objective of the conspiracy – to issue and collect unlawful loans through netcredit.com.

148.    The Defendants utilized the internet, telephone, and/or mail to reach across state lines in furtherance of their conspiracy.

149.    Therefore, the Defendants violated 18 U.S.C § 1962(d).

**WHEREFORE,** Ms. Engelsen respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

      a.    Threefold the amount of actual damages;

b. Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c); and,

c. Any other relief this Court deems equitable and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Ms. Engelsen hereby demands a jury trial on all issues so triable.

Respectfully submitted on March 4, 2025, by:

**SERAPH LEGAL, P. A.**

/s/ *Fethullah Gulen*
Fethullah Gulen, Esq.
Florida Bar Number: 1045392
FGulen@seraphlegal.com
2124 W Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

## ATTACHED EXHIBIT LIST

A     Ms. Engelsen's NetCredit Statement, April 17, 2025 - Excerpt
B     NC Financial's Subsidiaries
C     NetCredit's Trademark Registration
D     Enova's Website